NU'UELUA S. PU'U, Plaintiff

v.

SILIPA LEUPULE and CONTINENTAL
INSURANCE Co., Defendants

High Court of American Samoa
Trial Division

CA No. 137-87

July 28, 1988

Before   KRUSE,   Associate   Justice, TAUANU'U, Chief
Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiff, Charles Ala'ilima
         For Defendants, Roy J.D. Hall, Jr.

Defendant, Continental Insurance Company, (hereinafter "Continental") moves for summary judgment in the above entitled matter under the following circumstances: Plaintiff has filed suit against Continental as the insurer of defendant Silipa Leupule pursuant to the provisions of the compulsory third party liability automobile insurance statute, A.S.C.A. §§ 22.2001 et seq., alleging property damages sustained as the result of the latter's negligent operation of his vehicle. Continental denies any insurance coverage issued in behalf of the said Leupule and by way of affidavit, expands on its denial with additional factual declarations which we treat, for purposes of this motion, as being as established.

Continental declares that on March 3, 1987, the alleged date of the automobile collision, it had no record of any third party liability policy for Silipa Leupule and the vehicle allegedly involved. That while it had issued such coverage for the said defendant and his vehicle for the period of 3/4/86 to 9/30/86, that particular policy had lapsed or expired on the latter date and the same was never renewed.

In response to the motion, plaintiff argues that the policy claimed by Continental as having expired was still in full force and effect, as a matter of law, by virtue of the provisions of A.S.C.A. § 22.2013. Plaintiff interprets this enactment as requiring an insurer to give 10 days prior notice of a policy's expiration date to the Director of Administrative Services before such a policy can be said to have ceased and be of no effect. Section 22.2013 provides:

(a) The director of administrative services shall be notified by the insurance carrier of the cancellation of any motor vehicle liability policy of insurance at least 10 days before the effective date of such cancellation.

(b) In the absence of such notice of cancellation, the policy of insurance shall remain in full force and effect, except that any policy subsequently procured and certified shall on the effective date of its certification terminate the insurance previously

69

certified with respect to any vehicle designated in both certificates.

(c) Upon receipt of the notice of cancellation, the license and all of the registration certificates of the person whose insurance has been canceled shall be suspended by the director of administrative services and shall remain so suspended until that person files a certificate of insurance.

Continental argues that the word "cancellation" as used in the enactment should not be confused with terms such as "expiration" or "lapse." The former is said to connote the situation where a policy is terminated prior to its stated term or period provided, whereas the notion of a policy lapsing or expiring means that the policy has arrived at the end of the term for which it was written. "Cancellation" is something that happens prior in time to an "expiration" and hence the terms are not synonymous. Continental submits that the enactment is confined only to terminations prior to the policy's stated term and accordingly that A.S.C.A. § 22.2013 has no application in the circumstances herein.

To the contrary, plaintiff argues that the enactment's use of the word "cancellation" means termination of the policy however effectuated, whether it be prior to the term stated in the policy or at the end of such term stated. In essence the argument is that an automobile insurance policy governed by the enactment has a term or duration which ends or terminates only upon the giving of 10 days advance notice to the Director of Administrative Services of a policy's termination whether such occurs before or after the stated term has run. In justification, plaintiff points to underlying public policy which gave rise to the enactment.

DISCUSSION

The Court was referred to a number of cases from different jurisdictions concerning the use of the word "cancellation" in a number of other comparable enactments. Our conclusion after review is that there is very little in the way of general principles that may be derived from these cases.

What we did note as apparent is that different jurisdictions, while having a common objective, utilized varying statutory controls for purposes of enforcement and thus a varying employment of language. For example, some enactments expressly distinguished situations requiring notice in advance of cancellation and situations requiring notice in advance of the need to renew. Some required notice to a public official only while others required notice to the insured as well. Whatever the particular notice requirements, the cases were generally of the consensus that statutory notices required strict compliance. In the final analysis the exercise significantly appears to be one of statutory construction and accordingly we look to A.S.C.A. §§ 22.2001 et seq.

The licensing of motor vehicles within the territory is an annual requirement (section 22.1004) and before any vehicle may be licensed the vehicle owner is required, among other things, to furnish "certification of insurance coverage as required by 22.2001 et seq. [the compulsory insurance statute]." A.S.C.A. § 22.1002(3). As no vehicle may be operated on the highways of American Samoa without valid licensing (section 22.1001), the cumulative effect of the above provisions is that permission to use the highways is made conditional to the maintenance of compulsory insurance.

A review of section 22.2003 reveals the obvious design of the compulsory insurance statute. That is facilitating compensation to the hapless highway victim who is injured or has sustained damage because of the negligent operation of a motor vehicle. The Act ensures some measure of economic solvency or financial responsibility of operators upon the highways to whom such innocent victims may look to for compensation. The public is thus afforded a realistic remedy against the inevitable tortious use of automobiles.

To secure these public ends the legislature has provided a number of built in controls and policing measures. The possibility of private dealing between the insured and insurer to defeat or avoid the statutory scheme will be of no effect. Section 22.2007 mandates a number of provisions deemed as incorporated in every policy governed by the Act. Among these implied provisions is a condition that a policy may not be "canceled or

71

annulled . . . by any agreement between the insurance carrier and the insured." Section 22.2007(b). Further, "no violation of a policy may defeat or void the policy." Section 22.2007(c). Additionally, the terms and conditions of the insurance contract may not be in conflict with the provisions of the statute. Section 22.2007(f). Therefore, notwithstanding any agreements that an insurer and insured may otherwise reach, the statute preempts with regard to third party benefits intended by the Fono.

Similarly, section 22.2019 is another control measure to enhance the achievement of statutory objectives. This enactment makes any violation of the statute's provisions a criminal offense punishable accordingly upon conviction.

Finally section 22.2013 (the text of which is above quoted verbatim) provides a manner of cancellation which if not complied with, will render the policy as continuing in full force and effect. The dispute here centers on the scope of this enactment and the operative effect of the word "cancellation."

We agree with Continental that the term "cancellation" as used in insurance law usually refers to termination of a policy prior to the expiration of the policy period by act or one or all of the parties; "termination" refers to the expirations of the policy by lapse of the policy period. See, e.g., Waynesville Security Bank v. Stuyvesant Ins. Co., 499 S.W 2d 218, 220 (Mo. 1973).

On the other hand, plaintiff contends that in the context of the territorial compulsory insurance statute the restrictive interpretation of "cancellation" as advanced by Continental "would seriously undermine the enforcement of American Samoa's mandatory insurance law. " (Plaintiff's Memorandum at P.3). In this regard we find that while plaintiff has correctly focused on the controlling factor at issue – the statute's enforcement and thus proper implementation – we do not agree that his conclusions are a necessary consequence of the statute. Plaintiff's primary contention is that the burden of reporting the failure of coverage as envisioned by the Act is placed upon insurance companies. That unless insurance companies are required to give advance

notice of non-renewal (as well as cancellations) of policies, the supervising agency would not be able to enforce the statutory sanctions of suspending vehicle registration and licensing when the insurance requirements of the Act are thus not met. The assumption is that vehicle owners will not do the reporting, or are less reliable at reporting, and that some incentive is therefore available for vehicle owners to be tardy with renewal because of the difficulties presented the Director of Administrative Services in finding out when sanctions should be made to attach.

In reviewing the compulsory insurance statute, the enforcement shortfalls suggested by plaintiff, as necessitating a reading of section 22.2013 to include the reinstatement of a policy that has expired because the insurer has not given prior notice of non-renewal, are not evident. The statute has provided a number of ways for the Director of Administrative Services to become aware of policy expirations and hence occasion to apply sanctions. Firstly, we note that the annual licensing requirement for automobiles may not be met unless the vehicle owner provides certification of insurance. <u>See</u> section 22.1002(3). This enactment further contains the proviso "that such coverage <u>will be effective for the period of the [vehicle's] license.</u>" (emphasis added). As may be seen the statute provides a common commencement and expiration date for both license and insurance and therefore the usual policing of vehicle licenses by traffic officers will also coincide as an enforcement measure with regard to insurance. The intertwining nature of the statute's enforcement features are evident in section 22.1002 which provides that upon compliance with the requirements of licensing, the Commissioner of Public Safety shall issue the license applicant with two decals to be placed on the vehicle's license tags, and which decals shall nominate the period of registration. Also section 22.1003 provides that such license tags shall be at all times visibly displayed on the front and rear of the vehicle. Thus, in the case of lapsed policies, legislative design has taken into account adequate public noticing measures to promote the attainment of social goals embodied in the compulsory insurance statute.

In addition to insurance certification requirements with the Commissioner of Public Safety

for licensing purposes, section 22.2002 requires that certification consistent with the requirements of sections 22.1001 et seq., must also be made to the Director of Administrative Services as a condition of continuing registration. The combined effect of these provisions is also the placing of registration on an annual review basis by reason of section 22.1002(3). With all these control features the enforcement problems attributed by plaintiff to the statute are not at all apparent. If the Fono had attempted an additional enforcement control measure by also placing a reporting burden of the insurance industry with regard to anticipated policy lapses, it could have easily articulated this requirement more clearly as opposed to creating an ambiguity with a term otherwise clear in matters of insurance.

On the other hand enforcement measures would surely be frustrated had the Fono not addressed "cancellation" options normally available to contracting parties. The tripartite ends of the compulsory insurance statute clearly necessitate the need for legislative restrictions on the ability of an insurer and an insured to privately cut short a policy term which is publicly held out as terminating on a date determinable from an automobile's license tags. Hence the legislature's use of the term "cancellation" was purposeful and the intent is clearly to limit a reporting burden on one of the contracting parties in these normally private occasions.

For the foregoing reasons we hold that plaintiff is not entitled to relief under subsection (b) of section 22.2013 by reason of Continental's failure to give advance notice of nonrenewal to the Director of Administrative Services. Motion granted.

It is so Ordered.